OPINION OF THE COURT
John R. Tenney, J.
An application has been made for permission to terminate the extraordinary life-sustaining measures by Aida M. Jones, the sister of Raul Mora, a patient in the Upstate Medical Center. Mr. Mora was brought into the hospital on September 8,1980 after he had allegedly been assaulted in a parking lot at the Upstate Medical Center. This matter is complicated because there is an allegation that he was assaulted by four police officers, and an investigation is presently pending before the Onondaga County Grand Jury.
At the time he was brought to the emergency room, there appeared to have been a cardiac arrest. He was resuscitated at that time but apparently has shown no spontane *291 pus neurological activity since. A brain scan done on September 9, 1980 was normal, and an EEG which was done on September 12, 1980 suggested no, or at best, minimal activity. A subsequent EEG done on September 19 and October 21 showed no activity. The patient has been in a deep coma, shows no spontaneous motion, and no lateral deviation of the eyes. The pupils are fixed and dilated and do not react to any external stimulus. All doctors who examined him have concluded that he is brain dead.
This application is symptomatic of the dilemma of the medical profession created by the advent of mechanical life-support devices. Under the common law, when there were no artificial life supports, the question of death was purely a medical definition based upon generally accepted findings. In the age of modern technology, the question of death has become more complicated. This problem first came to light in Matter of Quinlan (137 NJ Super 227, mod and remanded 70 NJ Super 10, cert den sub nom. Garger v New Jersey, 429 US 922), and it has been considered on various occasions by the courts of the State of New York.
In Matter ofEichner (Fox) (73 AD2d 431), it was found that it was proper for a friend or relative to petition on behalf of an unconscious person for the purpose of removing life supports. In that case, the court in a very learned opinion discussed the standing of the parties and the medical criteria which were required. The patient must be terminally ill, in a permanent coma which is chronic or irreversible. He must lack cognitive brain function and the probability of ever regaining cognitive brain function must be extremely remote.
Previously, the time of death issue was raised in Matter of New York City Health & Hosps. Corp. v Sulsona (81 Misc 2d 1002). When death has occurred is crucial in today’s age of modern medicine because of the increasingly common practice of organ transplant. Because it is necessary to make the transplant as soon as possible after death of the individual, it is necessary to establish precise guidelines which will assist the medical profession and assure them that if they act within the guidelines or criteria, they will not be subjecting themselves to further legal action. In *292 Sulsona (supra), the Judge felt that the matter should be referred to the Legislature.
Basically, when a patient is dead is a medical matter which should be left to the expertise of the medical profession. Judicial intervention should be limited to a review of the procedures followed and a determination that the findings are consistent with the established medical criteria.
In this case, the treating physician, after observing that there was no brain activity shown on the EEG, carried out a series of recommended neurological tests to determine whether or not there was any brain action. He concluded that the brain was dead, that the condition was permanent and irreversible, and that it was no longer appropriate to maintain life-support systems. Next, he made application to the hospital for permission to remove the life-support systems, and a review committee was appointed by the hospital for the purpose of examination of the patient and confirming or rejecting his findings. All the doctors agreed that the patient was brain dead and further life support was inappropriate. Prior to coming to these conclusions, the doctors terminated the life-support system for from two to four minutes which is consistent with accepted medical practice, and there was no sign of life independent of the system.
The significance of this finding was that medically speaking when the brain dies, the patient dies. It is conceivable that the cardiovascular system can be kept alive by artificial means until such time as some vital organ breaks down. However, there is overwhelming medical evidence that if the brain fails for a period of time the condition is final and irreversible. Thus, the conclusion in this case is brain death as medically defined meets the legal requirement for determining death.
The medical profession has had occasion to adopt acceptable procedures in determining brain death. So long as the profession acts within the guidelines of acceptable medical standards, it will be meeting legal requirements. No additional procedures are required, and court authorization is unnecessary.
*293 In this case, all the prescribed procedures were followed and in addition, two court-ordered physicians made an examination and agreed with the findings of the others. Necessarily, a legal decision can only be based upon the medical information which is furnished by the experts in that field. Since all agree that the patient is brain dead, and there is no possibility of recovery, there is no purpose in maintaining an artificial condition by the use of life-support systems. The evidence is clear that the doctors have met the criteria of the profession, met the criteria of society and have conformed to the reasonable standards with respect to human dignity in reaching their conclusions. Therefore, it is the judgment of this court that Raul Mora is dead by all reasonable standards, and that the application to terminate the life-support systems is granted. Furthermore, the application to designate Aida M. Jones as a committee of the person and property of Raul Mora is also granted.